UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                 )
SANTIAGO ROSARIO MERCADO,        )
                    Plaintiff,   )
                                 )
        v.                       )        CIVIL ACTION
                                 )        NO. 19-CV-11172-WGY
ANDREW SAUL,                     )
Commissioner of the Social       )
Security Administration,         )
                                 )
                    Defendant.   )
_____)

YOUNG, D.J.                                    May 26, 2020

**MEMORANDUM AND ORDER OF DECISION**

This is an appeal of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying an application for Social Security disability insurance benefits.  The plaintiff Santiago Rosario Mercado ("Mercado") appeals the denial arguing that it was not supported by substantial evidence under the Social Security Act, 42 U.S.C. § 405(g); the Administrative Law Judge erred as a matter of law in not weighing all medical opinions under 20 C.F.R. § 404.1527; and, on Appointments Clause grounds.  Compl., Ex. 3, Addendum to Compl., ECF No. 1-3; Pl.'s Mot. Reverse Commissioner's Decision ("Pl.'s Mot.") 3, ECF No. 21.

Pending before this Court are Mercado's motion to reverse and the Commissioner's motion to affirm the Commissioner's final

decision.  Pl.'s Mot.; Def.'s Mot. Affirm Decision Commissioner ("Def.'s Mot."), ECF No. 24; Mem. Supp. Def.'s Mot. Affirm Commissioner Decision ("Def.'s Mem."), ECF No. 25.  For the reasons stated below, this Court DENIES the Commissioner's motion to affirm and REMANDS the case for further proceedings to a new, properly appointed, Administrative Law Judge ("ALJ").

## I.   INTRODUCTION

On May 23, 2019 Mercado filed for reversal of the Commissioner's decision to deny his disability benefits, arguing that neither the ALJ who heard his case nor the Appeals Officer who denied review were properly appointed under the Appointments Clause.  See Compl., Pl.'s Mot. 7-10.  The Commissioner argues that Mercado waived these challenges.  Def's Mem. 1.  Mercado also argues that the ALJ erred in: 1) not weighing all the medical opinions or disposing of them with reason, 2) failing to obtain a medical expert opinion regarding the remote onset date, 3) determining that Mercado could do the jobs listed with his residual functioning capacity level, 4) not "gridding" Mercado out, 5) considering a vocational expert's opinion from a prior hearing, and 6) failing to consider Mercado's headache pain in determining his residual functioning capacity.  Pl's Mot. 11-17.

### A.   Procedural History

Mercado has filed several claims for disability insurance

benefits at different times.  <u>See</u> SSA Admin. Record Social

Security Proceedings ("R.") 26-27, ECF No. 18.[1]  Mercado filed

the claim in question on September 30, 2014 for disability

insurance benefits, Addendum to Compl. 3., where he alleged

disability since June 26, 2006, R. 27.  That claim was denied on

March 4, 2015.  R. 28.  Mercado requested reconsideration of

that decision and it was denied again.  <u>Id.</u>  Mercado then

requested a hearing, held on October 26, 2015, prior to which he

amended his onset date to December 30, 2011, the day before his

date last insured.  R. 29, <u>see</u> R. 516.  Another hearing was then

held on March 17, 2016 to discuss if administrative finality

barred the September 30, 2014 application.  R. 29, 112.  ALJ

Fulton denied the September 2014 claim stating that the prior

application barred the action under res judicata, and that

---

[1] The following table contains the page ranges of the
record exhibits:

| ECF No. | Page range | ECF No. | Page range | ECF No. | Page range |
|---------|-----------|---------|-----------|---------|-----------|
| 18-2 | 1-140 | 18-13 | 1082-1226 | 18-24 | 2314-2438 |
| 18-3 | 141-244 | 18-14 | 1227-1265 | 18-25 | 2439-2468 |
| 18-4 | 245-395 | 18-15 | 1266-1412 | 18-26 | 2469-2597 |
| 18-5 | 396-504 | 18-16 | 1413-1560 | 18-27 | 2598-2725 |
| 18-6 | 505-539 | 18-17 | 1561-1694 | 18-28 | 2726-2851 |
| 18-7 | 540-678 | 18-18 | 1695-1771 | 18-29 | 2852-2994 |
| 18-8 | 697-759 | 18-19 | 1772-1905 | 18-30 | 2995-3011 |
| 18-9 | 760-769 | 18-20 | 1906-1976 | 18-31 | 3012-3148 |
| 18-10 | 770-897 | 18-21 | 1977-2105 | 18-32 | 3149-3285 |
| 18-11 | 898-940 | 18-22 | 2106-2233 | 18-33 | 3286-3428 |
| 18-12 | 941-1081 | 18-23 | 2234-2313 | 18-34 | 3429-3502 |

x

Mercado was not disabled.  R. 29, 213, 230.  Mercado appealed

that denial and the Appeals Council vacated and remanded the

case with instructions to hold a new hearing.  R. 240-44.  This

new hearing was held on May 23, 2017.[2]  R. 132-140.  On August 1,

2017 the ALJ found that res judicata could not bar the September

30, 2014 application because of new regulations, but denied the

claim on the merits.  R. 52.  In September of 2017, the Appeals

Council denied review of this claim, making the ALJ's decision

final.  R. 1.

Mercado was granted an extension to file a civil action,

and he timely filed this complaint on May 23, 2019 against Nancy

A. Berryhill, Acting Commissioner of Social Security (later

replaced by Andrew Saul, Commissioner of Social Security).[3]

Compl. 1; Addendum to Compl. 4.  The Commissioner answered.

Answer Compl. 1, ECF 17.  Mercado then filed for reversal of the

August 1, 2017 decision of the Commissioner (the "decision"),

Pl.'s Mot. 1, and the Commissioner filed to affirm.  Def.'s Mot.

1.  This Court heard oral argument on these motions on February

---

[2] In the meantime, the Social Security Administration issued new rules changing the evaluation method for mental disorders. 81 Fed. Reg. 66138 (Sept. 26, 2016).

[3] In accordance with Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Commissioner Saul is automatically substituted as the named defendant in place of the former Acting Commissioner Berryhill.

11, 2020 and took the issue under advisement.  <u>See</u> Electronic

Clerk's Notes, ECF no. 35.

**B.  Factual Background**

**1.  Education and Occupational History**

Mercado was born on April 8, 1961 and was 50 years old at

the alleged onset date, December 30, 2011, and the date last

insured, December 31, 2011.  R. 51, 141, 157.  He served as a

soldier in the U.S. Army from 1979 through 2006, reaching the

rank of Staff Sergeant.  R. 565.  He has past relevant work as

an engine rebuilder, R. 50, a high school education, and can

communicate in English, R. 51.

**2.  Physical Impairments**

In 2006, Mercado was injured in Iraq when his vehicle

swerved to avoid a roadside bomb and collided with a tree.  R.

151.  In Mercado's disability report he alleged disability due

to post-traumatic stress disorder ("PTSD"), panic disorder,

depression, neck injury, and arthritis.  R. 564.  Mercado has

not engaged in substantial gainful activity from the alleged

onset date to the date last insured.  R. 35.  Mercado's physical

impairments include degenerative disc disease with cervical

radiculopathy, Hepatitis C, and decreased hearing controlled

with hearing aids.  R. 35, 189.  He has also been diagnosed with

hyperlipidemia, gastroesophageal reflux disease, headaches, and

knee arthralgia.  <u>Id.</u>

### 3.   Mental Impairments

Mercado suffers from several mental impairments including PTSD, organic mental disorder, affective disorder, anxiety disorder, depression with occasional suicidal ideation, and substance abuse.  R. 184.  Mercado also has limited memory capabilities.  R. 183.

### a)   Medical Record and Treatment

On March 6, 2007 Mercado received decompression and fusion surgery on his spine due to his 2005 injury.  R. 1786.  He also received an MRI which showed "degenerative changes."  R. 1527. An E.M.G. examination revealed radiculopathy.  R. 1237, 1256. Mercado had visits to the hospital for overdosing on medications in April and October 2012, and for depression in January 2013. R. 985, 2644.  Mercado was seen for a potential traumatic brain injury on May 19, 2011, but the Veterans Affairs Medical Clinic concluded there was no evidence of it.  R. 815, 818.

Dr. Stetson of the Veterans Affairs Medical Clinic, on March 10, 2011, indicated to the Veterans Affairs Regional Office that Mercado was "unemployable due to PTSD and associated depression."  R. 1466.  Dr. Lawson saw Mercado in June 2011 regarding a previous disability application filed in 2010, and noted reports of forgetfulness, pain, depression, trouble sleeping, lack of appetite, and that he could complete minimal

self-care activities but very little household chores.  R. 764-767.

Mercado received several neck injections to help with pain in October 2011, and in January, March, May, July, and November of 2012.  R. 818, 876, 40-42.  Mercado intermittently sought psychiatric help and was medicated with Venlafaxine, Mirtazapine, and Lorazepam.  R. 865-66, 3440.  Though Mercado would report that his medicine was helpful, his refill records were occasionally sparse, except for in October 2016, after he reconnected with an old girlfriend.  R. 3440-447.

Mercado was seen by Dr. Dewolfe in October 2011 who noted functional loss due to his spinal injury which included decreased flexion/extension of neck and mild intermittent pain.  R. 808, 811.  He was seen again by Dr. Stetson at the Veterans Affairs Medical Clinic, just two weeks later, who noted PTSD, dysthymia, and alcohol abuse.  R. 865-68.  Dr. Stetson continued Mercado's medications and noted a global assessment of function ("GAF") of 45.[4]  R. 865. Dr. Stetson noticed that Mercado seemed cognitively aware and in good spirits.  R. 866.

---

[4] The GAF was a tool used in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition to evaluate the severity of mental disorders.  A score of 41-50 indicates "serious symptoms," including serious impairment in social or occupational settings.  See Nadeau v. Colvin, Civ. A. No. 14-10160, 2015 U.S. Dist. LEXIS 36845, at *9 n.5 (D. Mass. Mar. 24, 2015) (Saylor, J.).

Mercado was also examined by Lisa Fitzpatrick, a psychologist, in connection with his disability claim.  R. 171. Dr. Fitzpatrick stated that his mental impairments were severe, and that he would have mild limitations in most daily life activities, with a moderate limitation in concentration.  R. 171-78.  She noted Mercado's issues with memory but stated that his medications were working well.  R. 174.  She further stated that Mercado "could carry out short, simple instructions, could concentrate for two-hour periods at a time, and could interact appropriately."  R. 176.

In December 2013, Mercado presented at the Veteran's Affairs Medical Clinic to see a neurologist with pain symptoms stemming from his neck injury.  R. 2643-44.  In January 2014 Mercado tried to get psychiatrist Dr. Milliken-Zumel to increase the dosage on his medications.  R. 994, 1000.  For most of 2014, Mercado was stable and reported exercising regularly and even completed an 8-mile bike ride.  R. 1209.  Mercado was happy with his medication management, although he did still suffer from depression, anxiety, and neck pain.  R. 1199-1202.

On January 14, 2015, the non-evaluating physician Dr. Draper evaluated Mercado's September 2014 application and determined that, for the period under consideration of June 2006 to December 2011, R. 146, Mercado would be limited to only occasional pushing or pulling with either upper extremity, with

only occasional climbing, balancing, stooping, kneeling, crouching, or crawling, could stand for 6 hours out of an 8 hour work day, could lift 20 lbs. occasionally, and would need to avoid concentrated exposure to noise, vibration, and hazards. R. 149-151.

On February 4, 2015 Mercado was seen by Steven Broder, Ph.D. with the Disability Services for a consultative examination.  R. 1227-34.  Here, Mercado stated he lived alone and did not have many friends, had a sporadic sleep schedule, and "sometimes does not eat for a day or two at a time."  R. at 1230.  Broder also noted Mercado was doing daily chores around the house and that his cognitive tests showed "claimant's abilities generally lie within the low-average to average categories although the last index score [working memory] is lower."  R. 1232.

On February 19, 2015, Dr. Susan Witkie considered the September 2014 application for disability and determined that as of the date last insured, Mercado had a mild limitation in the ability to perform activities of daily living, a moderate limitation in social functioning, and a marked difficulty in maintaining concentration with one or two episodes of decompensation.  R. 148.

On March 12, 2015, Mercado saw Dr. Stetson who stated that "given [Mercado's] improvement in many ways and his meager

involvement in treatment, I am comfortable stating that working around people would be very difficult, but I cannot confirm that he is unemployable." R. 1405.

On May 6, 2015, Dr. Goulding considered the September 2014 application and agreed with Dr. Draper regarding Mercado's physical impairments. R. 163-65. Dr. Lewis also considered the application on May 7, 2015 and concurred with Dr. Witkie regarding his mental impairments. R. 161-163.

In October of 2015, Mercado testified at a Social Security hearing that he could not be employed because of his neck pain, knee arthritis, PTSD, and migraine headaches. R. 72-73.

### 4.  ALJ Fulton's Decision

ALJ Fulton issued a denial of Mercado's 2014 claim on August 1, 2017. R. 23. He determined that Mercado had a residual functioning capacity to perform light work. R. 38; 20 C.F.R. §404.1567. ALJ Fulton gave great weight to reports from 2015 by non-examining physicians Dr. Draper and Dr. Goulding, stating that while these opinions were four years after the date last insured, they were "consistent with the record as a whole." R. 48.

ALJ Fulton also determined that Mercado was unable to perform his past work as an engine rebuilder. R. 50. He then determined that Mercado could perform work in the national economy. R. 51. He relied on the testimony of a vocational

expert, Dr. Porcello, who stated that a person in Mercado's position could work as an assembly machine tender, a small product packer, or a labeler and tagger.  R. 51.

## II.   ANALYSIS

### A.   Statutory and Regulatory Background

 To be eligible for a period of Disability Insurance Benefits, a claimant must establish that he was disabled on or before the date last insured, and that the disability existed until the application was filed or within twelve months of the application.  Resendes v. Astrue, 780 F. Supp. 2d 125, 140 (D. Mass 2011) (Gertner, J.)(citing 42 U.S.C. § 423(d)(1)(A)); see also 20 C.F.R. 404.320(b)(3), 404.621(d).

Disability is defined as being:

    unable to engage in any substantial gainful activity
    by reason of any medically determinable physical or
    mental impairment which can be expected to result in
    death or which has lasted or can be expected to result
    in death or which has lasted or can be expected to
    last for a continuous period of not less than twelve
    months.

42 U.S.C. § 1382c(a)(3)(A).  A claimant is not entitled to disability benefits unless he can demonstrate disability existed on or before the date that the claimant was last insured. Rivera v. Sec. of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986) (per curiam).  Substantial gainful activity is "[w]ork activity by an employee . . . [that] is the kind of work usually done for pay, whether in-cash or in-kind.  Activities

such as self-care, household tasks, unpaid training, hobbies,
therapy, school attendance, clubs, social programs, etc., are
not generally considered to be [substantial gainful activity]."
SSR 83-33, 1983 SSR LEXIS 34 at *2 (Jan. 1, 1983).

In order to be deemed unable to engage in substantial
gainful activity, the impairment must make a claimant unable to
perform not only his previous work, but also any work which
"exists in the national economy, regardless of whether such work
exists in the immediate area in which he lives, or whether a
specific job vacancy exists for him, or whether he would be
hired if he applied for work."  42 U.S.C. § 1382c(3)(B).  There
is a five-step process to determine if a claimant is disabled:

> 1) if the applicant is engaged in substantial gainful
> work activity, the application is denied; 2) if the
> applicant does not have, or has not had within the
> relevant time period, a severe impairment or
> combination of impairments, the application is denied;
> 3) if the impairment meets the conditions for one of
> the "listed" impairments in the Social Security
> regulations, then the application is granted; 4) if
> the applicant's "residual functional capacity" is such
> that he or she can still perform past relevant work,
> then the application is denied; 5) if the applicant,
> given his or her residual functional capacity,
> education, work experience, and age, is unable to do
> any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20
C.F.R. § 416.920 (2001)).  The applicant bears the burden of
proof at the first four steps.  Purdy v. Berryhill, 887 F.3d 7,
9 (1st Cir. 2018) (citing Freeman v. Barnhart, 274 F.3d 606, 608

(1st Cir. 2001)).  If the claimant cannot perform past jobs, the Commissioner must come up with specific jobs that the claimant can do, otherwise, the claimant is deemed disabled.  Freeman, 274 F.3d at 608.

**B.    Standard of Review**

Questions of law are reviewed under a de novo standard while questions of fact are evaluated under the substantial evidence test.  Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)(internal citations omitted).  This Court must affirm the ALJ's factual decision unless the Commissioner has "committed a legal or factual error in evaluating a particular claim."  See Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir.1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

Even if this Court could reach a different conclusion, it should affirm factual findings when there is substantial evidence supporting the Commissioner's decision.  See Rodriguez Pagan v. Secretary of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).  The Supreme Court has defined substantial evidence

as "'more than a mere scintilla' . . . it means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  It is the job of the Commissioner, not this Court, to weigh evidence from different sources.  See Seavey, 276 F.3d at 10.

    If an issue of fact remains after correcting the administrative ruling, the court must remand for further proceedings.  Id. at 11.

    ### C.    Appointments Clause Issues

    Mercado makes two Appointments Clause challenges.  First, he argues that the ALJ who conducted his hearing was not properly appointed in accordance with the Appointments Clause of the Constitution.  Pl.'s Mem 6.  Next, Mercado argues that the Appeals Officer that denied review was not a proper official to make that decision.  Pl.'s Mot 11.  The Commissioner argues that claimant waived this challenge.  Def's Mem. 1.

    Mercado argues that Social Security ALJs are "Officers of the United States."  Pl.'s Mem. 6 (citing Lucia v. Security & Exch. Comm., 138 S. Ct. 2044 (2018)).  Lucia stated that ALJs at the Securities and Exchange Commission (SEC) are Officers of the United States and therefore must be properly appointed.  138 S. Ct. at 2049.  Mercado argues this case extends to Social

Security ALJs.  Pl.'s Mem. 6.  The Commissioner argues that
Mercado's failure to raise this issue before the agency in the
administrative proceedings forfeited this claim under <u>Lucia</u> and
other precedents, including <u>United States</u> v. <u>L.A. Tucker Truck</u>
<u>Lines, Inc.</u>, 344 U.S. 33 (1952).  Def.'s Mem. 6.

### 1.  Waiver

There is contradictory case law on whether a claimant can
waive Appointments Clause challenges by failing to raise them at
the administrative level.  Some courts argue that the
distinction between constitutional and substantive claims
precludes arguments of waiver in an Appointment Clause
challenge. Others find waiver applies, regardless of the nature
of the claim.

<u>Lucia</u> requires Appointment Clause challenges to be made
timely.  138 S. Ct. at 2055 (quoting <u>Ryder</u> v. <u>United States</u>, 515
U.S. 177, 182-83 (1995).  In <u>Lucia</u>, petitioner argued for the
first time on its appeal to the Securities and Exchange
Commission that an Appointments Clause issue was present.  <u>Id.</u>
at 2050.  The Supreme Court allowed this challenge.  <u>Id.</u> at
2051.

<u>L.A. Tucker</u> states conversely that in administrative
proceedings issues generally must be raised at the
administrative level in order to be reviewable.  344 U.S. at 37.
Mercado points to <u>Sims</u> v. <u>Apfel</u> which seems to distinguish

[15]

Social Security cases from this rule.  Reply Brief Def's Mem. 4 (citing 530 U.S. 103, 109-110 (2000)).  Sims involved a plaintiff in a social security claim who filed an appeal at the administrative level, for which the Appeals Council denied review.  530 U.S. at 105.  The plaintiff then sought to raise new issues at the district court level that were not raised in his petition to the Appeals Council.  Id.  The Supreme Court held that he had not waived these issues.  Id.

Sims did not decide issue exhaustion before ALJs, but dicta from this case suggests that waiver should not apply to social security cases, regardless of the nature of the claim.  The Sims court explained that typically issue exhaustion is required by statute and there is no such statute in social security proceedings.  530 U.S. at 107-08.  The court further stated that it does occasionally require issue exhaustion without a statutory basis in adversarial proceedings, id. at 109, but "Social Security proceedings are inquisitorial rather than adversarial."  Id. at 110-111 (plurality).[5]  The Court concluded that 'the general rule [of issue exhaustion] makes little sense in this particular context.'"  Id. at 112 (plurality).  Justice O'Connor concurred but based her opinion on the fact that

---

[5] The First Circuit has similarly noted that social security determinations are a non-adversarial process.  Seavey, 276 F.3d at 8.

plaintiffs in social security proceedings are not notified of any issue exhaustion requirement.  Id. at 113 (O'Connor, J.) (concur).

Despite the Sims case, most district courts have decided against claimants who raise issues first at the district court level, stating that it is inefficient to allow claimants to raise new issues on appeal.  See, e.g., Peterman v. Berryhill, Civ. A. No. 18-13751, 2019 WL 2315016, at *12 (D.N.J. May 31, 2019); Fortin v. Commissioner of Soc. Sec., 372 F. Supp. 3d 558, 565 (E.D. Mich. 2019); Catherine V. v. Berryhill, Civ. A. No. 17-3257 (DWF/LIB), 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019); Jackson v. Berryhill, Civ. A. No. 18-00591 (RBK), 2019 WL 1417244, at *5 (D.N.J. Mar. 29, 2019); Bonilla-Bukhari v. Berryhill, 357 F. Supp. 3d 341, 352 (S.D.N.Y. 2019); Cox v. Berryhill, Civ. A. No. CV 16-5434, 2018 WL 7585561, at *2 (E.D. Pa. Dec. 18, 2018).

Some of these courts distinguish Sims (which involved claims on the merits) from constitutional challenges (like Appointments Clause claims).  Fortin distinguished Sims on these grounds in the context of an Appointments Clause challenge, stating, "where the challenge is to the structural integrity of the process itself, the adversarial nature of the litigation reemerges."  372 F. Supp. 3d at 565.  Others reject the idea that Sims extends to this type of challenge: "Most notably, the

[17]

Sims argument has been uniformly rejected by courts across the country, which have recently ruled that a Lucia challenge must be raised before the ALJ."  Jackson, 2019 WL 1417244 at *5.

Some courts, however, find that the distinction between constitutional and substantive claims actually favors extending Sims.  The Third Circuit has declined to require issue exhaustion in an Appointments Clause challenge.  Cirko ex rel. Cirko v. Commissioner of Soc. Sec., 948 F.3d 148, 152 (3d Cir. 2020) ("Because both the characteristics of the Social Security Administration (SSA) review process and the rights protected by the Appointments Clause favor resolution of such claims on the merits, we hold that exhaustion is not required in this context and therefore will affirm.")

The Supreme Court specifically addressed Appointments Clause challenges in Ryder, 515 U.S. at 182-83:

> We think one who makes a timely challenge to the
> constitutional validity of the appointment of an
> officer who adjudicates his case is entitled to a
> decision on the merits of the question and whatever
> relief may be appropriate if a violation indeed
> occurred.  Any other rule would create a disincentive
> to raise Appointments Clause challenges with respect
> to questionable judicial appointments.

Id.  The question remains as to what the Supreme Court meant by timely.  See Freytag v. Commissioner of Internal Revenue, 501 U.S. 868, 878-79 (1991)(citing Glidden Co. v. Zdanok, 370 U.S. 530, 535-36 (1962)) (calling Appointments Clause challenges to

judicial officers "nonjurisdictional structural constitutional objection" that may be considered on appeal even if not ruled upon below).

This Court has previously decided that a claimant waives a substantive argument by not bringing it up during administrative proceedings.  See Cameron v. Berryhill, 356 F. Supp. 3d 186, 192 (D. Mass. 2019) (citing Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001)).  In the present case, however, this Court finds the distinction between substantive and constitutional claims convincing.  Appointments Clause arguments "implicate both individual constitutional rights and the structural imperative of separation of powers."  Cirko, 948 F.3d at 153 (citing Glidden, 370 U.S. at 536–37).  This Court therefore agrees with Cirko that Appointments Clause claims are of a different nature than substantive arguments and should be adjudicated despite waiver arguments.

### 2.  Appointment of the Administrative Law Judge

As Mercado has not waived his Appointments Clause argument, this Court turns now to the merits of that argument and determines that an ALJ of the Social Security Administration meet the Lucia test for an "Officer of the United States" ("Officer").

After the ALJ issued the decision in Mercado's case on August 1, 2017, R. 52, the Appeals Council denied review on

September 19, 2017, R. 1-5.  The Lucia decision was issued in
June of 2018.  See Lucia, 138 S. Ct. 2044 (2018).  The
Commissioner tried to rectify any challenges made to Social
Security appointments by ratifying, on July 2018, all
appointments of ALJs and Administrative Appeals Judges ("AAJs")
at the Appeals Council.  Social Security Ruling 19-1p ("SSR 19-
1p"); see 138 S. Ct. 2044 (2018).  This ratification came after
the decision in Mercado's case was rendered and therefore does
not cure the issue.  See SSR 19-1p.

In arguing that the ALJ is an Officer, Mercado relies on
the test outlined in Aurelius Inv., LLC v. Puerto Rico, 915 F.3d
838 (1st Cir. 2019).[6]  This case discerned from Lucia, Freytag,
and Buckley v. Valeo, 424 U.S. 1 (1976), a test to determine
whether appointees are inferior Officers.  Id. at 856.  The test
asks whether "(1) the appointee occupies a 'continuing' position
established by federal law; (2) the appointee 'exercis[es]
significant authority'; and (3) the significant authority is
exercised 'pursuant to the laws of the United States.'"  Id.

---

[6] cert. granted sub nom. Financial Oversight & Mgmt. Bd. for
Puerto Rico v. Aurelius Inv., LLC, 139 S. Ct. 2735 (2019), and
cert. granted, 139 S. Ct. 2736 (2019), and cert. granted sub
nom. Official Comm. of Unsecured Creditors of All Title III
Debtors Other Than COFINA v. Aurelius Inv., LLC, 139 S. Ct.
2736, 204 L. Ed. 2d 1126 (2019), and cert. granted sub nom.
United States v. Aurelius Inv., LLC, 139 S. Ct. 2737 (2019), and
cert. granted sub nom. Union de Trabajadores de la Industria
Electrica y Riego, Inc. v. Financial Oversight & Mgmt. Bd. for
Puerto Rico, 139 S. Ct. 2738 (2019).

Prong one requires a continuing position and prong three requires the authority of the position to be created pursuant to federal law.  Aurelius, 915 F.3d at 856.  The ALJs of the Social Security Administration meet both these prongs.  The ALJ position was created pursuant to the Administrative Procedure Act of 1946, 5 U.S.C. § 1001 et seq., and section 1102 of the Social Security Act, which gave the Board the power to "make and publish such rules and regulations, not inconsistent with this Act, as may be necessary to the efficient administration of the functions with which each is charged under this Act."  42 U.S.C. § 1302(a).  ALJ's of the Social Security Administration are similar to other ALJ positions.  See generally Vanessa K. Burrows, Cong. Res. Serv., RL 34607, Administrative Law Judges: An Overview (2010) (comparing the duties and positions of ALJ's across agencies).  A Social Security ALJ has duties which include presiding over hearings and issuing decisions.  See 20 CFR § 416.1453.  This makes the Social Security ALJ's position pursuant to federal law.  With respect to the third prong, ALJ's receive a career appointment, making it a continuing position. 5 CFR § 930.204.

An ALJ also exercises significant authority similar to the SEC ALJ's that Lucia deemed to be Officers.  Lucia compared SEC ALJ's to Freytag's analysis of tax court Special Trial Judges ("STJ") and noted they both, "take testimony, conduct trials,

rule on the admissibility of evidence," and so on.  138 S. Ct.
at 2048 (internal quotes omitted) (citing Freytag, 501 U.S. at
881-882).  These are all also functions of a Social Security
ALJ.  See 20 CFR § 416.1453.  While SEC proceedings are
adversarial, see Lucia, 138 S. Ct. at 2049, Social Security
ALJ's meet this prong despite their proceedings being more
inquisitorial.  This Court finds persuasive the Solicitor
General's issuance of a memorandum stating that ALJs who do not
preside over adversarial hearings would likely still be
considered officers.  See Memorandum from the Solicitor General,
U.S. Dep't of Justice, to Agency Gen. Counsels, Guidance on
Administrative Law Judges After Lucia v. SEC (S. Ct.) (July
2018).  "Nonetheless, much of the reasoning of Lucia applies
with equal force to such ALJs: while they may not preside over
adversarial trials, they do take testimony, preside over
hearings, receive and weigh evidence, and employ various
mechanisms for obtaining compliance with their orders."  Id. at
3.  This Court agrees that the similarity in authority between
the ALJs in Lucia and to the STJs in Freytag necessarily
determines that Social Security ALJs are inferior Officers.

Therefore, this Court concludes that ALJ's of the Social
Security Administration are Officers.  Because Mercado did not
waive his Appointments Clause challenge, and the ALJ is an
Officer, Mercado must be given a new hearing before a properly

appointed ALJ other than ALJ Fulton.  See Lucia, 138 S.Ct. at
2055; Cirko, 948 F.3d at 159-60 (remanding to new ALJs after
determining plaintiffs did not waive their Appointments Clause
challenges).

### 3.  Appointment of the Appeals Officer

Mercado also brings an Appointments Clause challenge to the
Appeals Officer in his case.  He contends waiver does not apply
here because he challenges the officer who made the appellate
decision, which he could not have challenged at the
administrative level.  See Pl's Mot. 10.  The Commissioner
argues that the Appeals Officer did not issue a decision on the
case, but rather declined to issue a decision altogether, and
therefore he was not in violation of the Appointments Clause.
Def.'s Mem. 12.

Califano v. Sanders describes the process of appeals in
social security cases.  430 U.S. 99, 101 (1977).  First, an
applicant files a claim which is either denied or approved.  Id.
(citing 20 C.F.R. §§ 404.905-404.907 (1976)).  If denied,
claimant may file for reconsideration.  Id.  If upon
reconsideration the application is denied again, claimant may
request a hearing before an ALJ.  Id. at 102 (citing 42 U.S.C. §
405(b)).  The decision of the ALJ is then reviewable by the
Appeals Council who can remand the decision with instructions or
decline review.  See 20 C.F.R. § 404.977.  Lastly, 42 U.S.C.

section 405(g) authorizes review of that final decision by a federal district court.  Califano, 430 U.S. 99 at 102.

The Supreme Court has stated that an Appeals Council dismissal constitutes a decision ripe for district court review. Smith v. Berryhill, 139 S. Ct. 1765, 1771 (2019) (holding that an Appeals Council dismissal for timeliness constituted a reviewable "final decision" under § 405(g)).  The ALJ's decision thus did not become a reviewable final decision until the Appeals Officer denied review of Mercado's claim.  See 42 U.S.C. § 405(g).  This Court finds no merit in the Commissioner's argument that the Appeals Officer's dismissal was not a decision.  An Appeals Officer declining review is, for all practical purposes, a decision to affirm the ALJ's opinion.  See 20 C.F.R. § 404.970.  The Commissioner also argues that an Appeals Officer is authorized to make this decision by statute, citing 20 C.F.R. § 422.205(c).  Def.'s Mem. 12.  While true, the Appeal Officer's statutory authority does not answer the constitutional question of whether an Appeals Officer was acting as an Officer.

This Court now applies the Aurelius test to Appeals Officers and holds that they are not constitutional Officers. See 915 F.3d at 856.  This Court will begin with prong three of the test, which asks whether the authority derives from federal law.  Id. at 838.  Like the ALJ position, the Appeals Council

was created pursuant to section 1102 of the Social Security Act.

See SSR 82-13.  The Appeals Council consists of "approximately

53 Administrative Appeals Judges, 44 Appeals Officers, and

several hundred support personnel."  Brief History and Current

Information about the Appeals Council, Soc. Sec. Admin.,

https://www.ssa.gov/appeals/about_ac.html, (last visited May 20,

2020).  Thus, the Appeals Council includes Appeals Officers,

making their position one created pursuant to federal law.

Prong one of the Aurelius test asks whether the Appeals

Officer occupies a 'continuing' position established by federal

law.  915 F.3d 856.  United States v. Germaine clarified this

prong by stating that "the term embraces the ideas of tenure,

duration, emolument, and duties."  99 U.S. 508, 511-12 (1878).

An Appeals Officer's duties are continuing and not occasional.

See Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-3-

002 (describing the duties of the Appeals Council, and the

Appeals Officers as a permanent position).

It is at the second prong of the analysis -- the question

of whether Appeals Officers exercise "significant authority" --

where it becomes apparent that they are not constitutional

Officers.  While the Appeals Council is comprised of both

Appeals Officers and AAJs, Appeals Officers never make reviewing

decisions individually.  20 C.F.R. § 422.205(b).  Review of a

hearing decision must be conducted by at least two members of

the Appeals Council who must both agree on the decision,
otherwise "the Chairman or Deputy Chairman, or his delegate"
participates as a third member of the panel and a majority
decision will carry the day.  20 C.F.R. § 422.205(b).  An
individual member of the Appeals Council, therefore, never makes
a decision alone.

While an AAJ can sign off on affirmations or remands, an
Appeals Officer can only sign off on denials of requests for
review.  HALLEX I-3-2-5(C).  A denial of a request for review
can be issued by just one Appeals Officer, see 20 CFR §
422.205(c), but such a denial is subject to review by a second
Appeals Officer or an AAJ.  HALLEX I-3-5-25(C).  Therefore,
Appeals Officers make limited and highly supervised decisions.
If ruling in council, their power is constrained by the AAJ, and
when ruling to deny review of an ALJ decision, their denial must
be agreed upon by either a second Appeals Officer or AAJ.
HALLEX I-3-5-25(C), 42 U.S.C. § 405(g).

The Court in Freytag decided that while STJ's never issued
final decisions, they still retained significant authority
because they had important independent discretion over duties
including presiding over hearings, ruling on admissibility of
evidence, taking testimony, and enforcing compliance with
discovery orders.  501 U.S. at 881-82.  The role of the Appeals
Council is different, as instead of presiding over hearings it

may deny, dismiss, or grant review.  HALLEX I-3-0-10.  The key distinction in <u>Freytag</u>, though is that "[i]n the course of carrying out these important functions, the special trial judges exercise significant discretion."  <u>Freytag</u>, 501 U.S. at 882.  In contrast, Appeals Officers do not, and cannot, act alone in making these decisions, so they exercise significantly less discretion.

This Court, therefore, rules that Appeals Officers do not meet the test for being a constitutional Officers because they lack significant discretionary authority.

### D.  Challenges to the ALJ's Decision

#### 1.  Mercado's Argument that ALJ Fulton Failed to Properly Evaluate the Medical Evidence.

Mercado claims that ALJ Fulton did not properly weigh all the medical evidence in the record.  Pl.'s Mot. 11-12.  Mercado specifically argues that the ALJ did not weigh the opinions of Dr. Doraiswami, Dr. Dewolfe, Dr. Miliken-Zumel, Dr. Freeman, Dr. Lawson, and Dr. Broder.  <u>Id</u>.  An ALJ must consider all medical opinions in the record.  20 C.F.R. §§ 404.1527(b); 416.927(b).  The regulations, however, "do not require an ALJ to expressly state how each factor was considered . . ."  <u>Bourinot</u> v. <u>Colvin</u>, 95 F. Supp. 3d 161, 177 (D. Mass. 2015) (Hillman, J.).  This Court finds, nonetheless, that the ALJ's failure to weigh the opinion of Dr. Dewolfe constituted prejudicial error.

The Court first looks at the opinion of Dr. Doraiswami, a physician who treated Mercado in 2011.  The Commissioner argues that the ALJ was not required to consider Dr. Doraiswami's decision, but nevertheless did.  Def.'s Mem. 15.  The Court agrees with the Commissioner.  The ALJ clearly notes Dr. Doraiswami's evaluation on the first page of his decision.  R. 26. n.2.  Furthermore, Dr. Doraiswami's opinion was pursuant to an earlier claim for disability, which the ALJ was not required to consider under 20 C.F.R. § 404.1513(a)(5)(iv) because that new rule was not yet in effect.[7]

Next, Mercado argues that the ALJ did not consider Dr. Dewolfe's opinion of October 18, 2011 indicating "that [Mercado] would be out 2-4 weeks out of 12 months."  Pl.'s Mot. 12.  Dr. Dewolfe determined that, as a result of his spinal injury, Mercado had episodes of incapacitation over the past year equivalent to not less than two weeks' time and not more than four weeks time.  R. 812.  The ALJ did mention this questionnaire in his opinion, but not the episodes of incapacitation.  R. 40.  This is an issue, because in addition to Dewolfe's finding -- which occurred a mere two months before

---

[7] This rule, effective for claims filed on or after March 27, 2017, states that ALJ's must consider prior medical opinions.  See 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (Final Rule); see also Cameron, 356 F. Supp. 3d at 196 (declining to apply rule to pre-2017 claim).

the alleged onset date -- there was an additional report in
March 2011 by Dr. Joseph Rafferty of the Veterans Affairs
Medical Clinic indicating Mercado's "increased absenteeism" from
work.  R. 1792.  Furthermore, at the hearing, Mercado's counsel
asked the vocational expert hypotheticals about a person with
the same characteristics as Mercado who had to take two-hour
breaks from the workday, or who missed two days a month of work,
and the vocational expert responded that this person would be
unable to hold a job.  R. 98-100, 103-104.

Courts have established that an ALJ must address the
absenteeism issue:

> In this case, not only was there evidence from
> treating sources that goes to the issue of
> absenteeism, but the vocational expert testified that
> a person who would "experience over the course of a
> year an absentee rate of approximately 12 to 24
> absences from the workplace" would not be able to
> work.  By failing to address this evidence, the ALJ
> clearly breached his duty.

Lopez-Lopez v. Colvin, 138 F. Supp. 3d 96, 113-14 (D. Mass.
2015) (Kelley, M.J.), reconsidered in part, 144 F. Supp. 3d 260
(D. Mass. 2015) (Kelley, M.J.).  See also Walker vs. Barnhart,
Civ. A. No. 04-11752, 2005 U.S. Dist. LEXIS 20569, at *55  (D.
Mass. Aug. 23, 2005) (Woodlock, J.)("[t]The ALJ erred by failing
to consider -- by either accepting or explicitly discrediting --
the record evidence from Walker and her treating physician
regarding how frequently she could be expected to miss work due

to [her condition]").  Accordingly, the ALJ should have
addressed the issue of how much Mercado would miss work and what
impact that would have on his ability to hold a job.  This was
an error.

Mercado next argues that ALJ Fulton did not consider Dr.
Miliken-Zumel's opinion that Mercado meets the standards for
PTSD promulgated in the Diagnostic and Statistical Manual of
Mental Disorders, Fifth Edition ("DSM-5").  Pl.'s Mot. 12.  ALJ
Fulton did specifically mention Dr. Miliken-Zumel's
questionnaire in his decision, R. 44, and found that PTSD was a
severe impairment, R. 35.  The Court finds no error on this
point.

Mercado also argues that ALJ Fulton failed to consider Dr.
Freeman's opinion that Mercado has incomplete paralysis with
right neuropathy.  Pl.'s Mot. 12.  Here, again, ALJ Fulton did
mention Dr. Freeman's questionnaire, though not the specific box
regarding incomplete paralysis.  R. 40.  Dr. Freeman, however,
assessed the incomplete paralysis as mild and noted that the
nerve condition did not impact Mercados' ability to work.  R.
803.  Again, Mercado has not suggested prejudicial error here.

Mercado contends that ALJ Fulton did not consider Dr.
Lawson's opinion assessing his GAF at 50, Pl.'s Mot. 12, but the
ALJ mentioned an equivalent determination in his opinion.  R.
40.  ALJ Fulton did specifically weigh Dr. Stetson's assessment

that Mercado had a GAF of 45, finding it inconsistent with the record as a whole.  R. 49.  Furthermore, the GAF "has recently fallen into disfavor as an assessment tool" due to its subjectivity.  Bourinot, 95 F. Supp. 3d at 178.  The Social Security Administration has published guidance steering ALJ's away from reliance on GAFs, following their removal as a diagnostic tool from the Fifth Edition of the DSM.  See SSA AM-13066.  ALJ Fulton's failure to mention Dr. Lawson's GAF assessment of 50 does not constitute prejudicial error.

Lastly, Mercado argues that ALJ Fulton did not consider properly the opinion of Dr. Broder that Mercado "could not manage his funds."  Pl.'s Mot. 12.  In his summary of Dr. Broder's opinion, R. 45, ALJ Fulton left out reference to the following portion of Mercado's cognitive testing: "should [Mercado] be awarded benefits, it appears prudent to appoint a representative payee to assist him with the management of these."  R. 1233.  ALJ Fulton did specifically mention the cognitive testing results, stating "that [Mercado's] abilities generally fell within the low-average to average categories, with the exception of working memory which was quite limited." R. 45.  The ALJ concluded that Mercado "had impairments that more than minimally impacted his ability to engage in work related activities," but he was "not persuaded that the degree of impairment rendered him disabled."  R. 50.  Mercado is unable

to show how Dr. Broder's recommendation for a representative payee would alter this opinion.

In conclusion, this Court finds that an error exists on Mercado's claim involving the absenteeism issue, since ALJ Fulton did not address this in determining step five of the analysis.

### 2.   Mercado's Argument that the ALJ Failed to get a Required Medical Expert Opinion to Determine an Onset Date.

Mercado argues that the ALJ erred in not resolving the onset date of disability with aid of a medical expert.  Pl.'s Mot. 12-13 (citing SSR 83-20).  The Social Security Agency determined that Mercado was disabled on September 30, 2014, R. 328, and Mercado contends the actual onset date of this ability was before December 30, 2011.  Pl.'s Mot. 13.  SSR 83-20 was the applicable rule at the time of the 2017 rulings.[8]  R. 7, 52.

The relevant portion of SSR 83-20 states:

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor

------------

[8] SSR 83-20 was rescinded and replaced with SSR 18-1P effective October 2, 2018.

when onset must be inferred.
SSR 83-20 goes on to say that when there is not enough medical
evidence to properly determine an onset date, a medical expert
must be used.  "If the alleged disability involved a slowly
progressing impairment, the ALJ may need 'to infer the onset
date' based on 'medical and other evidence that describe the
history and symptomatology of the disease process.'"  Fischer v.
Colvin, 831 F.3d 31, 35 (1st Cir. 2016) (quoting SSR 83-20, 1983
WL 31249, at *2).  If the medical evidence suggests an onset
date, the ALJ "[i]n addition to determining that an individual
is disabled . . . must also establish the onset of disability."
SSR 83-20, 1983 WL 31249, at *1.

Mercado does not suggest, nor does this Court find, any
evidence of ambiguity as to the amount of medical evidence
available before the alleged onset date.  See Pl.'s Mot. 12.
The ALJ summarized the opinions of five doctors in the year of
Mercado's alleged disability.  R. 39-41.  Mercado instead
alleges ambiguity due to the amount and complexity of the
medical evidence.  Pl.'s Mot. 13.  This kind of complexity,
however, is not addressed in SSR 83-20 unless the medical
evidence is "not consistent" with the alleged onset date.  SSR
83-20, 1983 WL 31249, at *3.  SSR 83-20 thus did not require the
ALJ to call a medical expert.

The ALJ does state that Dr. Witke determined an onset date of July 11, 2012 regarding Mercado's claim for Supplement Security Income payments, but not regarding his claim for disability benefits.  R. 50.  The ALJ rejected the relevance of Dr. Witke's conclusion to Mercado's status on the date of December 3, 2011, R. 50, because there were other medical records in the fall of 2011 indicating he was not disabled at that time, R. 49.  As there existed sufficient evidence in the record to make this determination, ALJ Fulton did not err by declining to call a medical expert.

### 3. Mercado's Argument that the Residual Functional Capacity Conflicted with the Jobs Offered to Him and the Vocational Expert Opinion Conflicted with the Dictionary of Occupational Titles.

Mercado argues that the ALJ erred because his "residual functioning capacity would not allow Mr. Mercado to perform any of the jobs the vocational expert cited and was inconsistent with the [Dictionary of Occupational Titles] in violation of SSR 00-4p."  Pl.'s Mot. 14.

SSR 00-4p requires that when evidence provided by a vocational expert conflicts with the DOT, the ALJ must "resolve this conflict before relying on the [Vocational Expert] or [Vocational Specialist] evidence to support a determination or decision that the individual is or is not disabled."  SSR 00-4p, 2000 WL 1898704, at *4.

The ALJ determined that Mercado had the residual functional capacity to perform light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

C.F.R. § 404.1567(b).  The vocational expert listed assembly machine tender, small product packer, and labeler and tagger as examples of jobs that Mercado could perform.  R. 97-98.  Mercado contends that the Dictionary of Occupational Titles ("DOT") contradicts the ALJ's residual functioning capacity because all of the listed jobs require a Reasoning Level of 2 ("R2") (out of 6) under the General Educational Development (GED) system.  Pl.'s Mot. 14; see also U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed.1991) (available at https://occupationalinfo.org) (last visited May 20, 2020); id. at Appendix C (describing GED system); id. at DOT ## 754.685-014, 222.687-022, 229.587-018 (listing requirements for machine tender, packer, and tagger, respectively).

The DOT defines the requirements of R2 as: "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a

few concrete variables in or from standardized situations." Id.
at Appendix C.  R1, the lowest level, requires a person to
"carry out simple one- or two-step instructions." Id.

The ALJ concluded -- when analyzing the residual
functioning capacity -- that Mercado "can understand and
remember simple instructions and can concentrate for 2-hour
periods over an 8-hour day on simple tasks." R. 38.  While
these definitions suggest a conflict, another session of this
Court found that "a claimant limited to 'simple, unskilled
tasks' may still be able to perform a job with GED reasoning
level 2." Lafrennie v. Astrue, Civ. A. No. 09-40143-FDS, 2011
WL 1103278, at *8 (D. Mass. Mar. 23, 2011) (Saylor, J.) (citing
Pepin v. Astrue, Civ. A. No. 09-464-P-S, 2010 WL 3361841, at *2-
6 (D. Me. Aug. 24, 2010); Meissl v. Barnhart, 403 F. Supp. 2d
981, 983-84 (C.D. Cal. 2005)).  Several District of Maine cases
have also concluded that a R2 level is not contradicted by an
ALJ finding of simple instructions. Pepin, 2010 WL 3361841, at
*3, report and recommendation adopted, Civ. A. No. 09-464-P-S,
2010 WL 3724286 (D. Me. Sept. 16, 2010) (citing Meissl, 403 F.
Supp. 2d at 984).  The Seventh and Eighth Circuits have
concluded that even a Reasoning Level 3 ("R3") can be consistent
with a limitation to simple tasks. See Terry v. Astrue, 580
F.3d 471, 478 (7th Cir. 2009); Hillier v. Social Sec. Admin.,
486 F.3d 359, 367 (8th Cir. 2007).

The court in LaFrennie, noting that the claimant in that case was moderately, but not markedly limited in memory and concentration, may still have been able to perform jobs at the R2 level.  2011 WL 1103278, at *8.  Similarly, another session of this Court examined whether a conflict existed under SSR-004P when a claimant argued his R3 level conflicted with the ALJ's finding that he could complete simple tasks: "there was no conflict between the [Vocational Expert's] testimony and the DOT's level-three classification, and even if such conflict did exist, it certainly would not have been so obvious as to require the ALJ to address it before rendering a decision."  Auger v. Astrue, 792 F. Supp. 2d 92, 98 (D. Mass. 2011) (Ponsor, J.).

In this case, the ALJ concluded moderate limitations in the category of understanding, remembering or applying information. R. 36-37.  The ALJ did note that working memory was "quite limited," but did not assign it a marked limitation.  Id. Accordingly, the ALJ's description does not conflict with assigning jobs that require a Reasoning Level of 2.

Mercado also argues that the ALJ's Residual Functioning Capacity determination, which included limitations to occasional push/pull, conflicts with the listed jobs (assembly machine tender, small product packer, and labeler and tagger) which all require frequent reaching, handling, and fingering.  Pl.'s Mot. 14-15.  20 C.F.R. § 404.1569(a) defines pushing and pulling as

exertional limitations.  While the ALJ did restrict the
exertional limitations of pushing and pulling, he did not
address nonexertional limitations, like reaching and handling.
R. 38; 20 C.F.R. § 404.1569(c).  There is therefore no conflict
here.

Mercado also argues that the ALJ erred by asking the
vocational expert in advance to provide explanation of conflicts
with the DOT, rather than after her testimony.  Pl.'s Mot. 14.
SSR 00-4p does not impose specific procedures regarding the
resolution of any conflict.  The rule states that when a VE
provides testimony, the ALJ has an affirmative responsibility to
"ask the [Vocational Expert] or [Vocational Specialist] if the
evidence he or she has provided conflicts with information
provided in the DOT; and if the [Vocational Expert's] or
[Vocational Specialist's] evidence appears to conflict with the
DOT, the adjudicator will obtain a reasonable explanation for
the apparent conflict."  SSR 00-4p, 2000 WL 1898704, at *4.
While the verb "has provided" is phrased in the past tense, SSR
00-4P was issued to "clarif[y]" policy guidance to ALJs.  2000
SSR LEXIS 8, at *1.  Hiding a reversible procedural rule in the
tense of verbs conflicts with the purpose of providing clear
instruction and can't be the proper reading of the ruling.

At the October 2015 hearing, the ALJ said to Dr. Porcello,
"let me ask you a few questions and if your testimony is

different from the Dictionary of Occupational Titles, will you let us know that?"  R. 95.  The vocational expert agreed.  R. 95.  This exchange satisfies the ALJ's duties under SSR 00-4p. Furthermore, as there were no conflicts between the DOT and the jobs listed, even if the procedure were improper it would not constitute reversible error.

### 4.   Mercado's Argument that he Should Have Been "Gridded Out."

Mercado argues that the ALJ erred in not gridding him out. Pl.'s Mot. 15.  The Medical-Vocational Guidelines, or grid, is used "in evaluating the individual's ability to engage in substantial gainful activity" and "where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."  20 C.F.R. Appendix 2 to Subpart P of Part 404 ("grid rule"), 200.00.

Mercado was born on April 8, 1961.  R. 69.  He was 50 years old on the alleged onset date and date last insured.  Id.  This would put him in the grid category of an individual approaching advanced age (age 50-54).  20 C.F.R. § 404.1563.  The ALJ found that Mercado could perform light work, had a high school education, and past skilled work that he could no longer perform.  R. 51; Compl. Ex. B.  Grid rule 202.14 instructs that

individuals with these characteristics are not disabled regardless of the transferability of their skills, so based on these determinations, ALJ Fulton was correct not to grid him out.  R. 51.

Mercado argues ALJ Fulton applied the grid incorrectly because the RFC determination was not supported by the record, and he should have been given an RFC designation of sedentary. Pl.'s Mot. 15.  He argues that grid rule 201.14, should apply. Id.  Whether to apply rule 202.14 or 201.14 would depend on whether he was capable of light or only sedentary work, and if he was capable of only sedentary work then a finding of "disabled" would apply upon a determination that Mercado lacked transferrable skills.  He further argues that his PTSD and mental disorders render him incapable of transferring skills. Id.

Mercado points to an electromyography ("EMG") study in 2006 conducted by Dr. Wolgethan that found that he could not lift more than 10 lbs. Pl.'s Mot. 15 (citing R. 1540).  An EMG test measures neuro-muscular response, so the cited study does not bear on Mercado's spine or neck problems.  See Johns Hopkins Medicine, Electromyography (available at: https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/electromyography-emg) (last visited May 22, 2020). The study by Dr. Wolgethan is unavailable in the record.  R.

[40]

Index, ECF No. 18-1.  Indeed, the document in which it is cited,

a 2007 RFC determination by Dr. Jones, stated Mercado could lift

20 lbs. occasionally.  R. 1546.  Furthermore, an October 2011

study –- just two months before the applicable period --

indicated Mercado's arms had normal strength.  R. 802-803.  This

means the 2006-2007 medical opinions are both contradictory and

distant from the relevant time period of December 2011.  See

Santiago v. Secretary of Health and Human Serv., 944 F.2d 1, 4

(1st Cir. 1992) (noting that plaintiff bears the burden of

showing disability during the relevant time period, though

medical evidence outside that time period can be relevant).

    The ALJ implicitly resolved the question by endorsing the

opinion of Dr. Draper that Mercado could occasionally lift 20

lbs.  R. 48.  An ALJ's decision may implicitly reject

conflicting evidence or interpretations without explicitly

addressing them.  See N.L.R.B. v. Beverly Enterprises-

Massachusetts, 174 F.3d 13, 26 (1st Cir. 1999).  Thus, it was

not error of law for ALJ Fulton to decline to specifically

address this controversy, and his decision not to adopt the 10

lbs. limitation based on this 2006 study was supported by

substantial evidence insofar as there was a 2011 study directly

contradicting it.

    Because Mercado's arguments regarding the effect of his

mental disorders on his ability to assume new skilled work would

[41]

not affect the grid determination, this Court declines to
analyze them, and must affirm ALF Fulton's decision.  See grid
rules 202.14, 201.14.

### 6. Mercado's Argument that the ALJ Erred in Relying on Vocational Expert Testimony from a Previous Hearing.

Mercado argues that the ALJ erred when he used vocational
expert testimony from a prior hearing in his decision.  Pl.'s
Mot. 16 (citing CJB 09-03).  The Commissioner argues that
Mercado did not raise this issue at the administrative level,
therefore, waiving any challenge to the vocational expert
testimony.  Def.'s Mem. 18 (citing Cameron, 356 F. Supp. 3d at
192).  Mercado did, however, raise this issue in his Appeals
Council brief.  Compl., Ex. H., Appeals Council Brief 2, ECF No.
1-11.  As this Court has previously stated, "an applicant for
Social Security disability benefits must raise any challenge to
a hearing officer's analysis to the hearing officer or the
Appeals Council in order to preserve that challenge for review
by the district court."  Cameron, 356 F. Supp. 3d at 192 (D.
Mass. 2019) (citing Mills, 244 F.3d at 8) (emphasis added).
Thus this issue not waived.

Though Mercado has not waived this argument, neither has
the ALJ erred.  Mercado is correct that CJB 09-03 states the
importance of vocational expert testimony being customized to
the individual, and an ALJ could not take one vocational

expert's testimony and use it in a different case.  CJB 09-03.
Here, the ALJ asked Dr. Porcello specific questions about
Mercado and then used those answers in his decision.  R. 51-52.
Under CJB 09-03, "both [Vocational Expert] interrogatories and
responses must be case specific and tailored to the facts of the
individual case at issue as the Social Security Act, the
regulations, and rulings require this approach."  CJB 09-03.
Because the vocational expert testimony in this case was
specific to Mercado, this Court finds no error.

### 7.    Mercado's Argument that the ALJ Erred in not Considering Headaches in Determining his Residual Functioning Capacity.

Mercado argues that the ALJ failed to consider his
headaches when determining his residual functioning capacity.
Pl.'s Mot. 17.  "[A] residual functional capacity assessment
must be based upon all relevant evidence, and [] the hearing
officer must 'consider limitations and restrictions imposed by
all of an individual's impairments, even those that are not
'severe.'"  Smith v. Astrue, 717 F. Supp. 2d 164, 173-74 (D.
Mass. 2010) (Neiman, M.J.) (quoting SSR 96-8p, 1996 SSR LEXIS,
at *5).

There is substantial evidence in the record to suggest that
the headaches did not present functional limitations.  Mercado
cites a report from May 2011 which details the severity and
frequency of headaches, Pl.'s Mem. 17, but he stated at the time

that these headaches did not cause fatigue, dizziness, weakness, or mobility issues.  R. 815-16.  A report from April 2011 states that Mercado cannot do physical activity while experiencing a headache, but that they did not lead to functional loss.  R. 1794.  A 2014 report similarly states that these headaches cause prostrating effects and sensitivity to light, R. 1002, but then concludes that they do not impact his ability to work.  R. 1004.  "The ALJ's findings of fact are conclusive when supported by substantial evidence," and here this Court must defer to the ALJ's findings based on this substantial evidence.  Seavey, 276 F.3d 1 at 10.

## III. CONCLUSION

Mercado's challenge on Appointment Clause grounds and his claim that the ALJ failed to accord proper weight to the opinion of Dr. Witke prevail.  For these reasons, this Court GRANTS Mercado's motion to reverse and DENIES the Commissioner's motion to affirm the Commissioner's decision.  This Court REMANDS the matter for further proceedings that are consistent with this ruling in front of a new properly-appointed ALJ.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE